IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TIMOTHY ARTHUR JAMES[1]                                          PLAINTIFF

V.                    NO. 3:24-CV-00099 JM-JTK

COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                   DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Timothy Aurthur James ("James"), applied for supplemental security income benefits on July 22, 2020, alleging a disability onset date of February 12, 2016. (Tr. at 13). The application was denied initially and upon reconsideration. *Id*.

---

[1] The case caption spells James's middle name as Arthur, but it is actually spelled Aurthur. (Tr. at 65-86).

After conducting a hearing, an Administrative Law Judge ("ALJ") denied James's application by written decision, dated April 7, 2023. (Tr. at 13-26). On April 18, 2024, the Appeals Council declined to review the ALJ's decision. (Tr. at 1-6). Therefore, the ALJ's decision now stands as the final decision of the Commissioner. James has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

## II.  The Commissioner's Decision:

The ALJ found that James has not engaged in substantial gainful activity since the application date of July 22, 2020.[2] (Tr. at 15). At Step Two, the ALJ found that James has the following severe impairments: alcohol use disorder, anxiety, depression, carpal tunnel syndrome, degenerative disc disease, spondylosis, osteoarthritis of the hands, coronary artery disease with status-post stent placement, and respiratory disorder. *Id.*

After finding that James's impairments did not meet or equal a listed

---

[2] For supplemental security income applications, the relevant time-period begins on the application date. (Tr. at 13).

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

impairment (Tr. at 16-18), the ALJ determined that James had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) he can no more than occasionally stoop, crouch, bend, kneel, and crawl; (2) he can no more than frequently finger/handle; (3) he is able to ambulate on level surfaces but not on agricultural or construction-type terrains; (4) he is able to perform simple, routine, and repetitive [tasks] with the ability to make simple work-related decision; (5) he is able to tolerate occasional exposure to dust, smoke, fumes, and other pulmonary irritants; and (6) he is able to read at a third-grade level. (Tr. at 19).

The ALJ determined that James has no past relevant work. (Tr. at 25). At Step Five, the ALJ relied upon the testimony of the Vocational Expert ("VE") to find that, based on James's age, education, work experience and RFC, jobs also existed in the national economy that he could perform. (Tr. at 25-27). Therefore, the ALJ found that James was not disabled. *Id*.

### III. <u>Discussion</u>:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see

also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. James's Arguments on Appeal

James contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that: (1) the RFC does not incorporate all

4

of James's limitations (specifically that he is illiterate, which is not reflected in the RFC); (2) the ALJ failed to assess function-by-function limitations in the RFC; (3) the ALJ erred in how he evaluated medical opinions; and (4) the ALJ erred at Step Five. The Court finds support for James's first argument.

The ALJ wrote that James was not illiterate. (Tr. at 25). However, James testified that he could not read or write, and that he was not able to work in the Job Corps because of it. (Tr. at 38). He said he repeated the sixth grade twice and left school after the eighth grade. (Tr. at 262, 1572). He did not have any work history and had not had a driver's license in thirty years. *Id*. James stated that he could not pronounce the name of his back condition (spondylosis or degenerative disc disease). (Tr. at 41). Three lay witnesses, who knew James well, filled out forms stating that James was often confused and repeated himself. (Tr. at 293-301).

While the ALJ says that James was able to fill out function and pain reports on his own, undermining James's statements that he could not read, James told the ALJ that he did not fill out the forms and that his sister did. (Tr. at 25, 38, 271-313). He said he only signed his name; his sister indeed indicated by her signature on the forms that she filled out the forms. *Id*. Defendant claims that because there were two different kinds of handwriting on the forms, James must have filled out part of the forms. This is just supposition and runs counter to James's own statement that his

5

sister filled out the forms, and counter to his sister's own signature indicating she had filled out the forms. (Tr. at 277, 279, 290).

James told he ALJ that he could not read or write, but then said he could "read some stuff," without elaboration. (Tr. at 38). James's attorney said that because James could not read or write, getting medical records for this case proved problematic. (Tr. at 35).

Moreover, James's treating APRN, who saw James almost every month in 2022, recorded in her notes on multiple occasions that James could not read or write. (Tr. at 1681, 1739). She diagnosed illiteracy or low-literacy. (Tr. at 1718). She wrote that James had poor insight. (Tr. at 1682). A consultative examiner saw James on June 29, 2021, and he assessed James in the borderline intellectual functioning range. (Tr. at 1571, 1577). He administered math tests, but he did not specifically test whether James could read or write. *Id*. The examiner said that James was not a reliable historian. (Tr. at 1571).

The RFC that the ALJ assigned indicated that James could read at the third-grade level, contrary to evidence in the record that James could not read. (Tr. at 19). This is pivotally important, because if the ALJ had found James to be illiterate, he would be *de facto* disabled based on Medical-Vocational Guideline, Section 202.09.[3]

---

[3] The Medical-Vocational Guidelines are a set of rules that render a finding of disabled or not

Moreover, the jobs that the VE identified at Step Five in this case would require reading at a minimum rate of 95 words per minute. (Doc. No. 14 at 23). This seems to conflict with the evidence of James's illiteracy, presenting an unresolved Step Five conflict.[4] At the very least, the ALJ should have further developed the record about whether James could read or write, because whether James is disabled turns on the answer to that question.[5]

## IV. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not

---

disabled based on a claimant's specific vocational profile. 20 CFR Part 404, Subpart P, Appendix 2; SSR 83-11.

According to Guideline 202.09, an individual closely approaching advanced age, limited to light work, with no past relevant work, and who is illiterate, is disabled. 20 C.F.R. Part 404, Subpart P, Appx. 2, 202.09. James was 51 years old, in the closely approaching advanced age category, on the date the application was filed. (Tr. at 25).

[4] Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014). The ALJ in this case did not ask about any conflict concerning the literacy required for the jobs identified.

[5] See *Hines v. Berryhill*, No. C16-1005-LTS, 2017 U.S. Dist. LEXIS 16969 (N.D. Iowa, Feb. 7, 2017) (Magistrate Judge properly remanded case for further development, when claimant left school after eighth grade, intellectual ability was in the borderline range, and claimant was essentially illiterate, but the ALJ identified jobs that would require some reading; Court ordered further testing on whether claimant could read or write, because he would be disabled based on Guideline 202.09 if illiterate).

The ALJ is required to recontact a treating or consulting physician or order further testing if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

supported by substantial evidence. The ALJ should have further developed the record with respect to James's ability to read and write.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 10th day of December, 2024.

_____
UNITED STATES MAGISTRATE JUDGE